Good morning, Your Honor. My name is Ken Watnick, and I represent the United California Discount Corp, or UCDC, in this matter. UCDC believes there are multiple grounds for reversing the District Court's judgment and entering judgment in favor of UCDC. UCDC issued two standby letter of credits, with UPS as the beneficiary and Ashford as the applicant. Standby letters of credit contemplate payment based upon a failure to perform the underlying obligation. This fact is confirmed by three agreements that Export-Import Bank, or XM, actually included in the record relating to this case. They had three agreements that defined standby letters of credit to require a failure of the buyer to perform the obligation. Let me ask you this. So, generally speaking, we understand a standby letter of credit to be available to compensate somebody where the underlying party has defaulted, correct? Yes, Your Honor. Now, but these letter of credits are negotiable. Yes, Your Honor. And the parties can negotiate any terms that they want, correct? Parties can negotiate any terms they want. They don't always have to require that payment be due only upon a showing of default, do they? Your Honor, it's possible the parties could have negotiated different terms. In this case, we submit they did not. Okay. So if you go – can you show me – can you go through the language that should persuade me that these letters of credit were only due or payable upon a showing of default? Yes, Your Honor. I read your brief and I really – I mean, I think I understand your argument, but maybe you could just show me by pointing to the language. Your Honor, I would direct your attention to Amendment No. 1 of the UCDC letter of credit. And the document says that UPS was required to submit a beneficiary statement which states, quote, Okay. But it says, our letter of credit. Doesn't that refer to the bank? That – Your Honor, our letter of credit refers to UPS's letter of credit, which is also in the record. So that reference to our letter of credit links the UCD statement to the UPS letter of credit. And the UPS letter of credit, which is in the record at 440, the UPS letter of credit includes two conditions. One, you have to say we've paid money. And, two, quote, the supplier is in default under the contract number 1. So now I didn't understand that. Now I understand. I think I have a better idea of your argument. I thought what you – the language that you just read to me, the amendment language, when it talks about the contract, when it – what was the second part of that language? The second part of – there are two parts that are important to our analysis, Your Honor. One is a drawing of our letter of credit. Our letter of credit. And the second part is under the terms of our – of the contract. So I – I understood your argument to be that because it says under the terms of the contract, that that's what required a default. Your Honor, we would submit there are two reasons. First, it is that reference to our letter of credit, which links – links the payment or the drawing of this UCDC standby letter of credit to the UPS letter of credit, which requires a default. And then it continues on by order of Ashford under the terms of the contract. The terms of the – Now, which term in the contract do you say, you know, makes it slam dunk in your favor? Your Honor, in – in our opinion, the terms are sections 6 and 8 of the contract, which required a guarantee and a performance bond to secure Ashford's performance of its obligations. The UCDC letter of credit is part of a mirror image series of guarantees. But I didn't understand this particular letter of credit to be the guarantee. Your Honor, it is not the guarantee. The way the transaction was structured was HSBC issued a – an original guarantee, which required a default before any payment. That HSBC guarantee was then backed up by the UPS letter of credit that I described before, which required a default. That UPS letter of credit was then backed up by the UCDC letter of credit, which looped back to the UPS letter of credit, which required default, and also looped back to the contract, saying under the terms of the contract. Counsel, to me, your argument would be more persuasive if there weren't the first letter of credit conditions, which specifically anchored to performance. But in the amendment, that language was taken out, which to me indicates that performance was no longer a requirement in order to trigger the default. Your Honor, respectfully, we would disagree for the reason that the guarantees were supposed to be mirror images. Everyone agrees to that. And the original UCDC letter of credit language was not consistent with the language of the two other mirror image guarantees, which specifically required default. The UCDC letter of credit had a reference to the failure to perform, and you might argue that that seems similar to default, but this is an international transaction in Jordan, and the language wasn't entirely consistent. And I would suggest that the amendment, number one, made that con — made it clear that the UCDC letter of credit was going to be consistent with the two prior guarantees, and they did it by taking out some ambiguous language and replacing it with something which specifically drew the UCDC letter of credit back into the mirror image transaction. The first one is more specific. Your Honor, it may be more specific, but it wasn't the specific language used in the two prior guarantees. Understood. Understood. But it's more specific in terms of specifying that failure to perform triggers the obligation. Your Honor, I — it may be more specific, but the replacement language is a drawing for amounts due under our letter of credit, which is the UPS letter of credit, which again has the supplier is in default as the condition. So it's the same language. And the language that had been requested by UPS was simply a drawing upon the letter of credit. We didn't accept that language. We said it's a drawing upon the letter of credit under the terms of the contract. We believe both of those conditions made it clear that you have to have a default here. But the beauty of a letter of credit is that if it's presented and it's certified in accordance with the letter of credit expression of what's required, then it's supposed to be payable on demand without any back and forth regarding whether or not the terms of resentment have been met. And so if you're trying to go back to the terms of the contract to determine whether or not it's a default, that's really not consistent with how letters of credit work in the marketplace. Your Honor, as a general rule, letters of credit don't tie back to the contract except whereas here there is language tying it to the contract based upon the two provisions we referenced in Amendment No. 1, the one provision. Don't you think that's inconsistent with how letters of credit generally operate? You don't usually have a debate about whether or not, you know, the underlying contract has been performed. Usually you present the letter. If it's consistent with the presentment terms, then it's honored. Your Honor, in many cases that's correct. But as Judge Paez pointed out, the parties were entitled to negotiate any terms they wanted. And the terms here linked UCDC's obligations to the contract. Well, but all they – what it says is that the presenters have to present a beneficiary statement certifying as true. And once they present that statement and certify that it's true, then isn't presentment satisfied at that point? Your Honor, no, I would say it is not, because the statement that had to be true was that supplier is in default, and it's an undisputed fact in this case that the supplier was not default. An arbitration panel determined there was no default. Well, it says the amount of our draft represents funds due as a result of drawing of our letter of credit by order of Ashford under the terms of the MLE contract. It doesn't say default, does it? Your Honor, by under our letter of credit, which is the UPS letter of credit, has a condition for payment being, quote, the supplier is in default under the contract. It just seems like you're reading too much. You're adding language to the amendment. Your Honor, I – we're not asking to add language. Under the UPS letter of credit is part of the beneficiary statement, the UPS. It doesn't say – it doesn't use the terms default. It doesn't say anything that would alter the ordinary role of the independence principle to, you know, in understandable words, unambiguous words. Your Honor, the only way a payment could be – a draw could be made under the UPS letter of credit, and UPS is the beneficiary here, so they know the reference to the UPS letter of credit. They know what it means. And the only way a payment could be made under the UPS letter of credit is if Ashford was in default. Okay. So Ashford was found not to be in default? Yes, Your Honor. And in the documents that we – you asked us to take judicial notice of, did Ashford or Ex-Im get any payments out of that Dordadian proceeding? Your Honor, I believe Ashford was found not to be in default, but it did not pay a stamp tax, which offset an amount that was owed to them. So the net effect may have been that Ashford did not receive a payment, but Ashford prevailed. And Ashford's pursuit of that judgment was financed in part by Ex-Im. Okay. So to the extent you have to pay out under the letters of credit to Ex-Im, can't you get reimbursed from Ashford? Your Honor, theoretically, there is a right to go after Ashford in the transaction, but the issue in the first instance is, do we have to pay out when the whole premise of letters of credits and, in our opinion, the premise of our letter of credit is a default? In this arena of international finance, what struck me here is that UPS – is it UPS? Yes, Your Honor. It wanted to – it didn't want to have to take any risk at all in the end, and it bought some comfort, some peace and comfort when it got – when it obtained a letter of credit from you. So that they placed the onus on you to have to go after Ashford. Your Honor – If that – if Ashford was ultimately found not to have violated the contract in Jordan. Your Honor, UPS, by purchasing a standby letter of credit from us, did get security, but by that amendment linked the security to its own letter of credit, very clearly, our letter of credit. And I'm not asking you to – I mean, presumably when you – when your client made a decision to, you know, to issue this letter or to – or to offer it, I guess, for a price, I mean, they assessed the risk. Yes, Your Honor. I have to make that assumption. It's not part of the record, but I think that's a fair assumption to make. What's the risk that this letter – that they're going to present for payment? There is that risk, but part of the risk also associated with that is the general understanding in the industry and the documentary evidence that there has to be a default, because if you look at the district court judgment and if you look at EXAM's papers, all they're saying is a demand had to be made under the UPS letter of credit for our obligation to be triggered. That was the language in the district court order, and that's the language in their appellate brief, and I would respectfully submit that's incorrect. There has to be a demand which satisfies the two conditions of the UPS letter of credit, and that one, and I apologize for saying it again and again, but it is supplier is in default. And the person making the demand under the UPS letter of credit is HSBC, who, again, only is paying because supplier is in default. But our cases seem to say, Andy Marine in particular, that if you want to put a condition precedent in the letter of credit, it has to be explicit. It can't be an inference. It can't be incorporation by reference. It has to be explicit, and it's not consistent with the use of letters of credit to engage in disputes regarding the agreement, the underlying agreement. So how does your argument square with our case law in that regard? Your Honor, I think our argument is consistent with the case law. In Andy Marine, the issue was not whether there was a default. The issue there was whether certain charges were appropriate because they had been incurred rather than paid. We're not arguing about the point is disputes. Underlying disputes are not to be argued about while the letter of credit is pending unless it's explicitly, those conditions are explicitly described in the letter of credit and not through inference and not through incorporation. I'm just wondering if your argument is consistent with that precept. Your Honor, we believe it is consistent because the exception exists when there is language in the letter of credit. It's explicit, though. And we would submit, Your Honor, that the explicit language is the reference to under our letter of credit. UPS. If you have to explain to us what that means, do you think it's explicit? Your Honor, I think it's explicit because UPS understood because they proposed the words our letter of credit. So they knew our letter of credit refers to UPS letter of credit. And it has an explicit condition of a default. And the addition of the words under the terms of the contract is consistent with the Mitsui case and the new vectors case. Under the terms of the contract is not a generalized reference to the contract. It's a specific reference to the terms of the contract which stated that guarantees were necessary to secure performance. Do you – I understood your argument in your blue brief to be a little bit different, that a standby letter of credit does not have the same independence principle that an ordinary letter of credit has by definition? Your Honor, a standby letter of credit under the case law is something that requires – comes into play when there is no performance of the underlying obligation. A standard letter of credit assumes there will be a payment upon satisfaction of the conditions. And that's the difference. Okay. But as you acknowledged at the beginning of your argument, though, these are all negotiable. Yes, Your Honor, they are. I mean, they just jack up the price. Yes, Your Honor, there's a possibility of jacking up the price. May I reserve the remainder of my time? Yes, Your Honor. May it please the Court, good morning. My name is Brent Whittlesey, and in this case I'm representing the Export-Import Bank of the United States. EXIM filed this action to recover damages from United following United's dishonor or refusal to pay under two letters of credit that United had issued. We believe that the district court properly determined that United had an obligation to pay under those instruments and correctly held United liable for damages for failure to do so. United contends that the district court erred and that United doesn't have to pay because the account party under the letters of credit, Ashford International, performed its contract with the Ministry of Education of Jordan. But United is incorrect in this assertion. The instruments that United issued were not performance guarantees. United's liability was to pay not based on performance by Ashford, but rather United's obligation arose when the original beneficiary of the United letters of credit, UPS Bank, was required to pay under terms of letters of credit that UPS Bank had issued to HSBC Bank. United accordingly was required to reimburse UPS Bank for the payment. Now, in this case, I believe that it's actually easier than looking at all the language in the letters of credit, although the language in the letters of credit is controlling and it clearly favors EXIM's position. But this failure to pay by United is all a complete post hoc rationalization. The reason why United didn't pay is set forth in the deposition of their officer, Michael Masumi. And Michael Masumi plainly stated that he didn't pay under the letters of credit because the account party, Ashford, didn't agree that payments should be made. If there's anything that this Court's decisions on letters of credit stand for, Andy Marine and other cases, it's the principle that the account party doesn't get to say whether payments should be made. It's just a rationalization by United with respect to the issue of nonpayment. United maintains that EXIM does not have authority to bring this action because the action wasn't properly assigned. But in this Court's prior ruling in the San Francisco Board of Trade case, this Court has plainly held that the right to sue for dishonor of a letter of credit is a chosen action and it's freely assignable. There's also a time bar argument, which Mr. Watnick hasn't addressed, and I won't address it either, unless there are questions from the members. Is there – should there – so they – I guess Ashford prevailed in Jordan before they – in the arbitration proceeding in Jordan? Ultimately, apparently so. Are there any offset to the damages as a result of that? No. As Your Honor observed, the remedy that UCDC has, United has, is to go get the money from its account party. From its what? Its account party, which in this case is Ashford. United agreed to take the credit risk of a demand on the letters of credit, and they charged a fee for doing it. They may have charged the right fee or the wrong fee. They may have properly or improperly analyzed the credit risk. But that's what they took when they issued a letter of credit to UPS Bank. They took the risk that Ashford would not repay a demand on those letters of credit. And consequently, they should be required to pay for dishonor and go look to Ashford for their reimbursement. Thank you very much. Thank you. Counsel? We have some time. If I may address his last argument. When counsel is saying that we should have gone after Ashford, UPS had or has or may have gone after HSBC for wrongful payment. So this would operate as getting a windfall to HSBC – I'm sorry, to UPS, because they would be able to get the money back from HSBC and get the money from us. In terms of the standing argument, Ex-Am, whether there is a right to assign a chosen action, there was no evidence that there was an assignment of the letters of credit. There was an assignment of loan documents between Ashford and UPS. But this letter of credit is not part of those loan documents. But the district court could sort all of that out if we determine that perhaps the district court should look at that. The district court said that the Jordanian proceedings were irrelevant and so didn't even delve into any of this. Is that correct? Your Honor, that's correct. The district court said it was irrelevant that Ashford had prevented. Well, but if you assume the risk, and it seems to me that then you have a right to go against Ashford, that's the remedy. Your Honor, we would have the right to go after Ashford, but the concept of these standby letters of credit is also payment upon default. Well, but if we don't agree with that. If we don't agree with that point, then do you agree that your recourse is against Ashford as opposed to anyone else? If you don't agree with that point, then our recourse isn't. We have to proceed with some other recourse. What would that recourse be? It would, I mean, Ashford would be part of it. You say it. You'd go after the account holder. It would be, Ashford doesn't exist. Oh, they don't exist anymore. Right. Oh. So there would be other issues here. Oh. So that would be part of it. That explains it. That explains a lot. That's why we would be out the money. All right. Thank you, counsel. And there's no insurance involved at your end? There is no. You can't get insurance to insure these kinds of letters of credit? No, Your Honor. Or there is, or it's just too expensive. The buck literally stops with you, right? The buck literally stops with us, Your Honor. Like you said, anything's possible, but there is no insurance. All right. Thank you, counsel. Export-Import Bank of the United States v. UCDC is submitted. And this session, the Court will adjourn for today.
judges: Wardlaw, Paez, Rawlinson